Filed 11/6/13  P. v. Ruiz CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RANDAL A. RUIZ,<br><br>    Defendant and Appellant. | B243545<br><br>(Los Angeles County<br>Super. Ct. No. GA078254) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Dorothy L. Shubin, Judge.  Affirmed.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Randal Ruiz (defendant) guilty of first degree burglary and second degree burglary, and the trial court sentenced him to concurrent 35 years-to-life sentences on each count.  On appeal, his appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) requesting that this court independently review the entire record to determine if there are any issues, which if resolved in defendant's favor, would require reversal or modification of the judgment.  Accordingly, we notified defendant that he could brief any grounds of appeal, contentions, or arguments he wanted us to consider.  As discussed below, notwithstanding two extensions of time within which to file a brief, defendant failed to timely submit a brief prior to the cause being submitted for decision.

Based on our independent review of the entire record, we conclude that there are no arguable issues on appeal and, for that reason, affirm the judgment of conviction.

## FACTUAL BACKGROUND

On October 23, 2009, Stephen Biskup was staying temporarily in a guesthouse located behind the main house at 1453 Bellford Street, Pasadena.  There was a storage shed behind the guesthouse.  That morning, between 7:00 and 8:00 a.m., Biskup "looked out on the porch to the backyard" and noticed that the gate to the yard, which had been closed the night before, was "slightly open."  Biskup approached the gate, looked through it, and noticed a man with a backpack on a bicycle about to leave.  Biskup did not know the man, who said "Hi" and then "took off on the bike."  A Sheriff's deputy arrived later that morning and interviewed Biskup.

In October 2009, Mary Ann Shemdin owned a residential property located at 1453 and 1455 Bellford Street in Pasadena.  There were two homes on the lot, a two car garage with a carport, and a storage shed at the back of the deep lot.  Shemdin lived in one of the homes and a male lived in the second one.

2

On the morning of October 23, 2009, the man who lived in the second house contacted Shemdin about something that had occurred in the storage shed at the back of the lot. Following her discussion with the man, Shemdin went to inspect the storage shed. She noticed that the door to the shed, which was always locked, was open, as was a window. When she entered the shed, she observed that it had been "ransacked." The shed had been "very full" with furniture, Christmas decorations, files, and boxes containing her daughter's possessions. Her daughter, Marie St. Claire, had moved out of state and left some of her possessions behind in the shed. Shemdin could see that "things [in the shed] had been gone through," but she did not have a written inventory of her daughter's possessions. Several items in the shed had been moved or altered.

After inspecting the shed, Shemdin called the Sheriff's Department, and a Sheriff's deputy responded to take a police report. As the deputy completed his report, a City of Pasadena police officer arrived and asked Shemdin if she knew a Marie St. Claire. When Shemdin told the officer that St. Claire was her daughter, he asked her if she recognized a computer.

A few days later, Shemdin went to the Pasadena Police Department and was shown certain items, including a computer and jewelry, among others. Of the items she was shown, Shemdin recognized the computer as her daughter's. Shemdin had last seen her daughter's computer, which was not operating properly, in the storage shed with her daughter's other possessions.

On October 23, 2009, Angele Ajamian resided at 1447 Bellford Avenue, Pasadena. Her neighbor, Mary Ann Shemdin, lived next door. That morning between 7:00 and 8:00 a.m., Ajamian was in her family room watching the news. From her window, she saw a man with a backpack going toward the back of the property where a rental unit was located. The man left a bicycle and stood behind a big tree. Ajamian opened the door and asked, "'Can I help you?'" The man replied, "'I'm looking for Hector.'" Ajamian said, "'There is no Hector here,'" and the man "took his bike and left." A few days later, police officers showed Ajamian a photo lineup and she identified

3

defendant's photograph as the man she saw in her backyard. Ajamian also identified defendant in court as the man she saw that morning.

On the morning of October 23, 2009, Frank Greer was home alone working in his office at his residence located at 2305 Woodlyn Road, Pasadena. His office was adjacent to the laundry room in his garage and connected to the laundry room by a door. The laundry room could also be accessed through the garage by another door.

At approximately 9:30 a.m., Greer heard a noise in the laundry room and looked up, but did not see anything. When he heard another noise from the laundry room, he looked up again and saw the silhouette of a man through the sheer white curtain on the door to the laundry room. Greer, who was expecting his wife, not a man, saw the male silhouette touch the door knob and heard the knob "kind of turn a little bit." Greer then said, "'Hello,'" which caused the man to "sort of [freeze]" and then leave.

Greer was "taken aback" and decided to investigate "what was going on." He went through the laundry room into the garage and outside to the driveway through the open front garage door. There he observed defendant, wearing a bandana and a backpack, trying to free a bicycle that was entangled in some mesh netting in a tomato garden. After defendant freed the bicycle and moved it into the driveway, he said, "'I was just looking for Hector.'" Defendant then mounted his bicycle and rode away.

Greer called 911 and provided a description of defendant. He informed the 911 operator that he was scheduled to leave for the airport and was told that "they would send someone right over." When a police officer responded, he told Greer that the police had found someone who matched the description Greer had provided to the 911 operator. The officer asked Greer to accompany him to a location where they were detaining the man matching the description. The officer transported Greer to the location where Greer was able to observe the man being detained wearing a bandana and identify him as the man he had seen at his house. Greer also identified defendant in court as the man with the bicycle that he saw in his driveway.

On October 23, 2009, City of Pasadena Police Officer Roxanne Bevel was working patrol with her partner Office Burchett. Shortly after 9:30 a.m., she received a

4

radio broadcast regarding a burglary. While the officers were en route to the scene of the burglary, they observed a male on a bicycle "who had a light gray covering over his head, [that] later was identified as a long-sleeved shirt." The man generally fit the description of the burglary suspect that the officers were provided in the dispatch broadcast. Officer Bevel identified defendant in court as the man they observed that morning.

As the officers approached defendant, Officer Bevel noticed that he had a backpack on his back and was carrying a green bag. The officers detained defendant and recovered a "Radio Shack golf scope" and screwdriver from his rear pockets and black and purple gloves from his front pants pocket. Inside defendant's backpack, Officer Burchett noticed "various tools, [a] screwdriver, allen wrenches, . . . a couple of watches, a recorder, . . . and . . . miscellaneous other items." Inside the green bag, Officer Burchett recovered a blue and silver laptop and other items. Red bolt cutters were also recovered from the backpack. In addition, the officers recovered jewelry from defendant's person, including six rings, hoop earrings, three bracelets, a pendant, and a chain, as well as a bicycle repair kit. The officers arrested and booked defendant.

On October 23, 2009, City of Pasadena Police Officer Christopher Burchett was working patrol with his partner, Officer Bevel. The officers contacted defendant that morning and eventually arrested him. Officer Burchett assisted Officer Bevel in searching defendant and inventorying all the items that the officers recovered from him. One of those items was a laptop computer. Officer Burchett powered on the computer and searched through it looking for a name. He found a resume with a name, Marie St. Claire, and an address, 1455 Bellford Avenue, Pasadena. Based on that information, Officer Burchett sent Officer Lopez to the address in an effort to locate the owner.

City of Pasadena Detective Richard Pippin investigated the burglary of the shed at 1453 Bellford Avenue, Pasadena. As part of the investigation, he spoke to Shemdin and showed her items that were booked into evidence as a result of defendant's arrest. Shemdin identified the computer as belonging to her daughter, but none of the other items. Detective Pippin also showed Ajamian a six-pack photo lineup. Ajamian identified the photograph of defendant in that lineup.

**B.      Defense Case**

Defendant called Mitchell Eisen as an expert to testify about various issues with the reliability of eyewitness identifications.

## PROCEDURAL BACKGROUND

In a second amended information, the District Attorney charged defendant in count 1 with first degree burglary in violation of Penal Code section 459[1] and in count 2 with second degree burglary in violation of section 459.  The District Attorney alleged that defendant had suffered seven prior violent or serious felony convictions within the meaning of sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i).  The District Attorney also alleged that defendant suffered two convictions for which a prison term was served within the meaning of section 667.5, subdivision (b).  The District Attorney further alleged that defendant had suffered two prior serious felony convictions within the meaning of section 667, subdivision (a)(1).

Following trial, the jury found defendant guilty on both counts.  In a subsequent court trial on the prior conviction allegations, the trial court found all of the prior conviction allegations true.

The trial court sentenced defendant on count 1 to a term of 25 years to life pursuant to the true findings on the prior strike convictions, plus a consecutive ten-year term pursuant to section 667, subdivision (a)(1), for an aggregate term on count 1 of 35 years to life.  The trial court sentenced defendant on count 2 to the same 35 years-to-life sentence as imposed on count 1 to run concurrent to the sentence on count 1.  The trial court also imposed, but stayed, additional two-year terms on each count pursuant to section 667.5, subdivision (b).

---

[1]      All further statutory citations are to the Penal Code unless otherwise indicated.

**DISCUSSION**

In response to the brief submitted by defendant's counsel under *Wende, supra,* 25 Cal.3d 436, we independently examined the entire record to determine if there were any arguable issues on appeal. Based on that independent review, we have determined there are no arguable issues on appeal. We are therefore satisfied that defendant's appointed counsel has fully satisfied his responsibilities under *Wende, supra,* 25 Cal.3d 436.

As noted above, on May 6, 2013, we granted defendant permission to file within 30 days, a letter brief raising any issues, arguments, or contentions that he wished to raise in support of his appeal. At defendant's request, we granted him two extensions of time, totaling an additional 45 days, within which to file a letter brief. Notwithstanding that defendant's last extension of time expired on July 15, 2013, defendant did not submit a brief before that date. Instead, well after the cause was submitted for decision on August 5, 2013, he attempted to file without permission on September 3 and 23, 2013, letter briefs comprised of over 100 handwritten pages.

Because defendant's letter briefs were submitted six to nine weeks late without permission and well after the cause was submitted, we are justified in not considering them. Even if we had considered the multitude of contentions raised by those letter briefs, we would not reverse defendant's judgment of conviction.

As to the many claims of ineffective assistance of counsel asserted throughout those briefs, such claims are generally not cognizable on a direct appeal, but rather are more appropriately raised on habeas corpus. "'To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."' (*People v. Kipp* (1998) 18 Cal.4th 349, 366 [75 Cal.Rptr.2d 716, 956 P.2d 1169], quoting *Strickland v. Washington* [(1984)] 466 U.S. [668,] 686.) Preliminarily, we note that rarely will an

appellate record establish ineffective assistance of counsel. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267-268 [62 Cal.Rptr.2d 437, 933 P.2d 1134].)" (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) "We have repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' (*People v. Wilson* (1992) 3 Cal.4th 926, 936 [13 Cal.Rptr.2d 259, 838 P.2d 1212] quoting *People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. (*People v. Wilson*, *supra*, at p. 936; *People v. Pope*, *supra*, at p. 426.)" (*People v. Mendoza Tello, supra,* 15 Cal.4th at pp. 266-267.)

As for the various other contentions involving pretrial suppression motions, discovery issues, evidentiary rulings, jury instructions, and various other claimed legal errors, to the extent those contentions were not forfeited, defendant did not and cannot demonstrate that he was prejudiced by such claims of error. The evidence of defendant's guilt was consistent and came from a variety of credible sources, including two eyewitness identifications by Greer and Ajamian, and the incriminating items recovered from defendant's person, including St. Claire's computer which had last been seen in the storage shed, the jewelry, and the burglary tools such as gloves, bolt cutters, screwdrivers, and wrenches. Given the strength of the evidence of defendant's guilt, the claimed errors could not have been prejudicial. "[E]ven if the court's ruling were deemed erroneous, it would not be prejudicial. Considering the consistent evidence of defendant's guilt from a variety of sources, the outcome of the trial was not affected by the court's ruling, either as a matter of reasonable probability under state law (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), or under the 'harmless beyond a reasonable doubt' standard for federal constitutional error (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].).)" (*People v. Hartsch* (2010) 49 Cal.4th 472, 497-498.) Based on our independent review of the record, even assuming one or

8

more of the claimed errors occurred, under any applicable standard, defendant was not prejudiced.

As to the various sentencing errors that defendant raises, including his claims of evidentiary error in the court trial on the prior conviction allegations, we have, as noted above, independently reviewed the record, including the record as it relates to the court trial on the prior convictions and defendant's sentence, and have determined that there were no errors concerning the trial court's admission of the documentary evidence in support of the prior conviction allegations[2] and no sentencing errors.[3] Accordingly, we affirm the judgment of conviction from which defendant appeals.

**DISPOSITION**

The judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[2]    See, e.g., Penal Code section 969b; *People v. Miles* (2008) 43 Cal.4th 1074, 1082.

[3]    See, e.g., *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [trial court's discretion to dismiss strike limited].